Nicholson, C. J.,
delivered the opinion of the court.
This is a bill to enjoin proceedings upon a judgment for $4,720 rendered in the Law Court of Memphis on the 21st of January, 1868, in favor of the Union Bank against S. M. Gates and others. The complainants allege that in 1865 they were sued by the Union Bank on a note for $5,000, executed by them, payable three months after date; and that soon thereafter they had an understanding with the officers of the bank by which the suit was to be dismissed, and the complainants were to pay the costs; and that in fact they did pay $13.65 costs. They allege that, relying upon this arrangement and understanding, they made no defense to the suit, and that they were surprised, in 1868, to find that judgment by default was. taken against them, and execution issued and levied.
They allege, further, that the $5,000 note was de-. posited by them with the officers of the bank as a *327 credit upon which to check, whose consideration was to be Confederate treasury notes, 'or currency issued by the Confederate authorities, then in armed resistance to the United States. They charge that the entire consideration of the note was Confederate treasury notes,, which were illegal, and issued in contravention-of public policy. They insist that said judgment was absolutely void, the note upon which the same was rendered being based upon said illegal consideration; and they pray for the writ of injunction, and that the same be made perpetual on final hearing; and for general relief.
The defendants demurred to the bill; and upon the overruling of the demurrer they answered, that it was not true that the consideration of the $5,000 note was, or was intended to be, Confederate treasury notes in whole or in part; that the note was the last of a series of renewals, the first of the series being for the consideration of the lawful currency of the bank before the Confederate money was issued.
They deny that the complainants had any agreement or understanding with any officer of the bank, that the suit on the note was to be dismissed, or not further prosecuted.
The case was heard at the March Term, 1871, of the First Chancery Court of Shelby County, when the Chancellor held that the consideration of the $5,000 note was not Confederate money; but that the note was the last of a seriés of renewals of a note for $5,000, first discounted in 1860 and renewed at intervals of three months until February 26, 1862., when *328 the note executed on that day, and on which the judgment was rendered, was discounted by the bank in renewal of the note of the same amount falling due on that day. The injunction was dissolved and the bill dismissed, from which decree complainants have appealed.
Upon the allegations of the bill, there was no error in the action of the Chancellor in overruling the demurrer.
It is manifest that the main reliance for relief against the judgment, in the filing of the bill, was the alleged illegality in the consideration of the note. On this allegation the bank took issue with the complainants, and the great body of the evidence is directed to this question. It is fully proved that some time in I860 the bank discounted a note for the complainants of $5,000, payable at the end of three months, and that on the day this note fell due the bank discounted another note for the same amount, the first note being on that day paid off and taken up. It is shown that this process was repeated at the end of every three months until February 26, 1862, when the seventh note of the same amount, drawn and endorsed by the same parties, was discounted, the proceeds passed to the credit of complainants, and their note for $5,000, due on that day, paid and taken up. There is direct antagonism between complainants and the officers of the bank as to whether these facts constituted an independent discount of the $5,000 note, or a discount for the renewal of the $5,000 note falling due on that day. It is fully shown that whether it *329 was an independent discount or a renewal discount, cannot be determined by any difference in the character of the entries made on the bank books or on the pass-book of the complainants, — the entries being exactly the same in either case. The question depends upon the intention of the parties, and that intention is to be ascertained by the facts and circumstances accompanying the discount, and the former dealings of the parties of the like character. If a bank discount a note for a customer with the understanding that when it falls due he may have a similar discount to enable him to pay and take up the first, and afterward a series of notes of the same amount, and with the same parties, are regularly discounted on the days when the successive notes fall due, said notes being regularly paid and taken up on those days, the conclusion is irresistable that these several transactions were intended by the parties to be renewal discounts, the ■considerations for the first discount running through and entering into all the successive renewals and discounts. Such we regard this case, as developed by the proof. There is nothing in the evidence as to the discount on the 26th of February, 1862, which conflicts with this conclusion.
We are, therefore, satisfied that the Chancellor was ■correct in finding that the note discounted on that day was a renewal, and was based on the consideration of the notes of the Union Bank, and not on Confederate treasury notes.
The conclusion at which we have arrived on this branch of the case disposes of all the questions raised *330 except as to interest after the note was removed south, in obedience to military orders. The removal took place about the time the note fell due, and continued until after the war closed.
It is conceded that during the pendency of a war, if the debtor and creditor are citizens of the opposing belligerent territories, no interest can be allowed. But in this case the debtor and creditor continued to reside in Memphis after its occupation by the Federal authorities, and the cashier of the bank remained there,, and had the management of its affairs. The fact that the note was within the Confederate lines, furnished no such obstacle to payment as to relieve him from liability for interest, unless he shows that he tendered payment and that it was refused. This is not shown. There was, therefore, no error in allowing interest on the note.
The judgment is affirmed.